UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

POST-BROWNING, INC.                        CASE NO. 1:14CV857

         Plaintiff,

    -vs-                                                  Michael R. Barrett, Judge

ROBERT KNABE,

         Defendant.

**OPINION & ORDER**

This matter came on for consideration upon Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 14); Defendant's Supplemental Memorandum in Opposition (Doc. 18); and Plaintiff's Supplemental Memorandum in Support (Doc. 19). The Court held a hearing on December 29, 2014 on the Motion for Preliminary Injunction.

Plaintiff later filed a Motion for Contempt and for Defendant to Show Cause and Renewed Motion for a Preliminary Injunction. (Doc. 20). Defendant has filed a Response (Doc. 23) and Plaintiff filed a Reply (Doc. 25).

Also before the Court is Defendant's Motion for Leave to File Expedited Discovery. (Doc. 15). A telephone conference on this Motion was held on December 17, 2014 in which the parties agreed to work cooperatively to produce the discovery.

Despite the multiple, diligent attempts made by counsel, the parties have not been able to resolve this matter, and have requested a ruling on these motions.

**I.     Background**

Post-Browning, Inc. is an Ohio corporation with its principal place of business in Blue Ash, Ohio. Post-Browning resells and installs bank equipment such as

surveillance/alarm equipment, money handling equipment and automated teller machines ("ATM") for banks and credit unions. Post-Browning is not a manufacturer, and pricing for the bank equipment is available to all resellers like Post-Browning.

On August 11, 2011, Defendant Robert Knabe began working for Post-Browning as a sales and service employee. Knabe signed the agreement at issue in this case, that is, the Confidentiality and Non-Compete Agreement effective August 4, 2011 ("Agreement"). (Doc. 1-3, Exh. B). The Agreement discusses the materials that the parties agree are confidential, including customer lists and pricing information. (Exh. B, ¶1). The Agreement also outlines a non-compete term of two years following termination of employment. (Exh. B, ¶2). During the two-year period, Knabe agreed that he "shall not, directly or indirectly, contact any customer . . . of the Company for any business-related purpose" or "solicit any customer . . . relating to any existing or planned products or services during the noncompetition period."

The Agreement further discusses Knabe's sales territory as the State of Indiana. (Exh. B, ¶2(a)). The Agreement also places an affirmative duty upon Knabe to notify Post-Browning of other employment and disclose to potential employers the existence of the Agreement. (Exh. B, ¶2(c)). In addition, Knabe is obligated to return all property and company records upon termination of employment. (Exh. B, ¶3).

Knabe resigned from his employment with Post-Browning on September 29, 2014. (Prelim. Inj. Hearing Exh. K). Knabe claims that he has returned all of Post-Browning's property. (Doc. 6, PAGEID# 111). Before his resignation, Knabe sent emails which contained confidential direct contact information for Post-Browning's customers. (Prelim. Inj. Hearing Exhs. C-J). These emails were sent to Payneless

ATM, a direct competitor of Post-Browning. Knabe later went to work for Payneless ATM.

By October 1, 2014, Post-Browning learned of Knabe's alleged violations of the Agreement and asked him to stop. Counsel for Post-Browning and Knabe attempted to negotiate a resolution of the matter. While these negotiations were occurring in early October 2014, Post-Browning was under the impression that Knabe would not be violating the Agreement. Post-Browning claims that Knabe was continuing to violate the Agreement by, among other things, calling upon Post-Browning employees in violation of the Agreement.

On November 12, 2014, the parties participated in a mediation before the Magistrate Judge, and entered into a temporary agreement whereby Knabe would be permitted to continue to work for Payneless ATM under certain conditions set forth in a Court Order. (Doc. 11). One of these conditions was that "Defendant is prohibited from contacting any Post-Browning, Inc. customers in Indiana." (Id.) Another condition was that "Defendant is prohibited from communicating with current Post-Browning customers and employees." (Id.)

On December 4, 2014, Knabe turned over emails that demonstrate he had continued to solicit Post-Browning customers after he resigned on September 29, 2014. In particular, Knabe turned over an email exchange between himself and Roger Henry dated October 3, 2014. (Prelim Inj. Hearing Ex. Q). Henry is an employee of the State Bank of Lizton, which is a Post-Browning customer located in Indiana. Henry is responsible for purchasing security equipment for the bank. In the email exchange,

Henry requests a quote for security equipment from Knabe on behalf of Payneless ATM.

## II. Analysis

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy, the purpose of which is to preserve the status quo. In determining whether to grant or deny a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. V. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). The foregoing factors are not prerequisites, but rather are factors that the Court should balance. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

### A. Likelihood of success on the merits:

Plaintiff seeks to satisfy the first Rule 65 factor by showing a likelihood of success on the following three claims: (1) misappropriation of trade secrets; (2) breach of the Agreement; and (3) tortious interference with contractual and business relationships.

#### 1. Misappropriation of trade secrets:

To obtain an injunction to preclude misappropriation of trade secrets under Ohio's Uniform Trade Secrets Act, a plaintiff must show that there was actual or

4

threatened misappropriation of its trade secrets. Ohio Rev. Code. §1333.61, *et seq*.

Under Section 1333.61(d), a "trade secret" is defined as:

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique or improvement, or any business information or plans, financial information or listing of names, addressed or telephone numbers, that satisfied both the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
>
> Ohio courts utilize a six-factor test to determine whether a trade secret exists.

*State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St. 3d 396, 399-340 (Ohio 2000).

Those six factors include:

> (1) The extent to which the information is known outside the business: (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.; see also Jedson Eng'g, Inc. v. Spirit Constr. Servs.,* 720 F. Supp. 2d 904, 922 (S.D. Ohio 2010). "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *State ex rel. Besser*, 89 Ohio St.3d at 400 (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 181 (1999)).

5

At the preliminary injunction hearing, testimony was introduced that some of the names and direct contact information Knabe provided to Payneless was information which was publicly available on either the Internet or the American Financial Directory. At this stage in the proceedings, Post-Browning has not shown the existence of trade secrets. Therefore, Post-Browning's Motion for Preliminary Injunction is DENIED as to Post-Browning's claim for misappropriation of trade secrets.

### 2. Tortious interference with contractual and business relationships

To recover under Ohio law on a claim of tortious interference with business relationships, a plaintiff must show: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1006 (S.D. Ohio 2008) (citing *Shah v. Cardiology South, Inc.*, 2005 WL 120062, *9, 2005 Ohio App. Lexis 195, at *25 (Montgomery Jan. 21, 2005)).

At this stage in the proceedings, Post-Browning has not shown a likelihood of success on the merits of its claim for tortious interference. Therefore, Post-Browning's Motion for Preliminary Injunction is DENIED as to Post-Browning's claim for claim for tortious interference with contractual and business relationships.

### 3. Breach of the Agreement

Post-Browning argues that Knabe breached the confidentiality, non-solicitation and non-compete provisions of the Agreement. Knabe responds that he was not bound by the non-compete provision because Post-Browning materially breached the Agreement when it failed to give him certain Indiana accounts. (Doc. 5, PAGEID# # 107, 110).

6

The Court concludes that Knabe has raised a genuine issue of material fact regarding whether Post-Browning lived up to promises made to Knabe regarding the Indiana territory. Therefore, it cannot be said at this stage of the proceedings that Post-Browning has demonstrated a likelihood of success on the non-compete provision in the Agreement.

Irrespective of this issue, Knabe was clearly in violation of the terms of his Agreement while he was still employed, including the dissemination of contacts to help secure his future employment. Knabe's intent is evidenced by his communications with Payneless ATM prior to this resignation. It is clear from the exhibits produced at the hearing, that Knabe has materially breached the confidentiality and non-solicitation provisions of the Agreement. Based on this evidence, Post-Browning has shown a likelihood of success on the merits of its claim for breach of the Agreement.

### B. Irreparable Harm

Irreparable harm exists when there is a substantial threat of material harm that cannot be adequately compensated through monetary damages. *See Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (citing *FOP v. City of Cleveland*, 141 Ohio App. 3d 63 (2001)). The second Rule 65 factor weighs in favor of Post-Browning. The use by Knabe of confidential information obtained through Post-Browning could result in irreparable harm to Post-Browning.

Courts have found injunctive relief is warranted when it is established that an employee gained intimate knowledge of an employer's trade secrets or confidential information, and has begun working for a competitor in a substantially similar capacity. *Id.* at 1007 (citing *P&G v. Stoneham*, 140 Ohio App. 3d 260, 274 (Ohio Ct. App. 2000))*.*

7

This rule has been justified because "the courts have recognized that 'it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so.'" *FirstEnergy Solutions Corp. v. Flerick*, No. 5:12-CV-2948, 2012 WL 6649201, at *5 (N.D. Ohio Dec. 20, 2012) *aff'd*, 521 F. App'x 521 (6th Cir. 2013) (quoting *Litigation Mgt., Inc. v. Bourgeois*, 2011 WL 2270553, at *7 (Ohio App. 8th Dist., 2011). In this case, Knabe was supplying confidential information to a competitor which is a clear violation of the Agreement. However, as to the employment of Knabe, this risk factor must also be considered in conjunction with substantial harm because of Knabe's claimed breach by Post-Browning.

### C. Substantial Harm to Others

The third factor weights in favor of Knabe. A preliminary injunction will preclude Knabe from continuing his employment with Payneless ATM which may cause him financial harm for which he could not recover if his breach of contract defense holds.

### D. Public Interest

The fourth factor is neutral. The public interest is served by having reasonable non-competition agreements enforced and preventing unfair competition. *See ALTA Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 786 (S.D.Ohio 1999) ("the public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts.") (quoting *National Interstate Ins. Co. v. Perro*, 934 F.Supp. 883, 891 (N.D.Ohio 1996)). However, it also is served by ensuring that an individual's employment opportunities are not unduly restrained.

### III. Conclusion

Balancing the equities in this case, the Court concludes that a preliminary injunction is necessary to enforce the Agreement. However, the balance of equities does not favor issuing a preliminary injunction to enjoin Knabe's employment with Payneless.

Accordingly, it is ordered that:

1. Plaintiff's Motion for Preliminary Injunction (Doc. 14) is **GRANTED in PART and DENIED in PART**

    a. It is hereby **ORDERED** that Defendant is restrained from violating the Agreement and **ORDERED** to return all of Plaintiff's property and materials.

    b. Defendant is further **ORDERED** to supply information regarding his contacts with Plaintiff's customers and any actual sales with those customers.

2. Plaintiff's Motion for Contempt and for Defendant to Show Cause and Renewed Motion for a Preliminary Injunction (Doc. 20) is **GRANTED in PART and DENIED in PART**; and

3. Defendant's Motion for Leave to File Expedited Discovery (Doc. 15) is **DENIED as MOOT**.

    **IT IS SO ORDERED**

                                           _/s/ Michael R. Barrett_
                                          Michael R. Barrett, Judge
                                          United States District Court